UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTINA FARIAS,
    Plaintiff,

                           CIVIL ACTION NO.
    v.                       17-11097-MBB

MASSACHUSETTS LABORERS' HEALTH
AND WELFARE FUND and EXPRESS SCRIPTS,
    Defendants.

**MEMORANDUM AND ORDER RE:**
**PLAINTIFF'S MOTION TO AMEND COMPLAINT (DOCKET ENTRY # 24);**
**DEFENDANT'S MOTION TO DISMISS COMPLAINT (DOCKET ENTRY # 16)**

**January 9, 2018**

**BOWLER, U.S.M.J.**

On July 13, 2017, defendant Express Scripts ("Express Scripts") filed a motion to dismiss this action with prejudice under to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). On August 3, 2017, plaintiff Christina Farias ("plaintiff") filed a motion to amend the complaint under Fed. R. Civ. P. 15(a)(2) ("Rule 15") (Docket Entry # 24) to add specificity to a negligence claim. She also filed an opposition to the motion to dismiss. (Docket Entry # 23). Defendant Massachusetts Laborers' Health and Welfare Fund ("the Fund") did not file a motion to join the motion to dismiss or a written opposition to the motion to amend. At an October 25, 2017 hearing on the motions, however, the Fund asserted the futility of the amendment as preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. At the conclusion of the hearing, this

court took the motions (Docket Entry ## 16, 24) under
advisement.

PROCEDURAL BACKGROUND

In April 2016, plaintiff filed a lawsuit in the United
States District Court for the District of Massachusetts.  See
Farias v. Mass Laborers' Health and Welfare Fund and Express
Scripts, Civil Action No. 16-10723-WGY.[1]  The action raises the
same claims, i.e., breach of contract and negligence, brought in
this case based on the same incident.  In September 2016,
plaintiff voluntarily dismissed the lawsuit after Express
Scripts filed a motion to dismiss.  In May 2017, she filed this
action with the same breach of contract and negligence claims in
Massachusetts Superior Court (Middlesex County).  The action
seeks to "recover for harm resulting from the Defendants'
refusal to prescribe medications." (Docket Entry # 26-1).  In
June 2017, the Fund, an ERISA employee benefit plan (Docket
Entry # 31-1, p. 55),[2] timely removed this action to federal

---

[1]  It is appropriate to take judicial notice of related court
proceedings.  See Bluetarp Financial, Inc. v. Matrix Const. Co.,
Inc., 709 F.3d 72, 78 n.4 (1st Cir. 2013) (taking "judicial
notice that neither the South Carolina state-court case [n]or
the Maine state-court case has gone to final judgment"); Ezra
Charitable Trust v. Tyco Intern., Ltd., 466 F.3d 1, 9 n.7 (1st
Cir. 2006) (allowing motion "to take judicial notice of the
SEC's 2006 complaint against Tyco" filed in district court, "the
subsequent consent decree, and the final judgment").
[2]  References to page numbers refer to the docketed page number
rather than the page number of the exhibit or document itself.

2

court based on federal question jurisdiction.  (Docket Entry #
1-2).

In lieu of filing a motion to dismiss, the Fund filed an
answer and asserted a crossclaim against Express Scripts.
(Docket Entry # 19).  In the crossclaim, the Fund asserts that
Express Scripts mistakenly "locked down" all of plaintiff's
prescriptions, including her psychiatric medications, to one
pharmacy.  The crossclaim further alleges that Express Scripts
rectified the mistake within seven days.  (Docket Entry # 19).

Express Scripts moves to dismiss the complaint because the
complaint:  (1) fails to allege sufficient facts of a contract
with respect to the breach of contract claim and sufficient
facts of a duty owed to plaintiff to support the negligence
claim; (2) ERISA preempts the contract and negligence claims;
and (3) any attempt to amend the complaint with an ERISA denial
of benefits claim is futile as to Express Scripts and the
damages plaintiff seeks are not recoverable.  (Docket Entry #
17).  In opposing the motion to dismiss, plaintiff asserts that
the proposed amended complaint adds the requisite factual detail
to the negligence claim.

In Count I for negligence, the proposed amended complaint
alleges that Express Scripts and the Fund ("defendants") had an
"obligation to act reasonably as to the disbursement of
medication" and a duty to "follow and abide by state statutory

and regulatory law."[3] (Docket Entry # 24-1). Because the negligence claim centers on a "failure to follow state law statutes and regulations," it "is outside the scope of ERISA," according to plaintiff. (Docket Entry # 23). In Count II for breach of contract, the proposed amended complaint alleges that defendants had "an obligation to arrange for disbursement of medication" and breached that obligation thereby causing plaintiff harm. (Docket Entry # 24-1).

At the October 25, 2017 hearing on the motions (Docket Entry ## 16, 24), plaintiff initially argued the motion to amend. In reply, the Fund acknowledged its lack of a "formal opposition" to the motion to amend and, consistent with Express Scripts' opposition (Docket Entry # 26), argued that ERISA preempted the state law claims for negligence and contract. The Fund concluded the argument by stating, "That's my position on the motion to amend." (Docket Entry # 32). Accordingly, this court will consider the Fund's oral arguments as opposing the motion to amend. As noted, the Fund did not join the motion to dismiss, which Express Scripts presented after the Fund made the foregoing arguments. Having preserved the defense of a failure to state a claim for relief in its answer (Docket Entry # 19),

---

[3] The original complaint simply alleges that defendants had an obligation to act reasonably in the disbursement of medication. (Docket Entry # 1-1).

the Fund avoids any prejudice because it retains the ability to file a motion for judgment on the pleadings. See Fed. R. Civ. P. 12(h)(2)(B).

## STANDARD OF REVIEW

The standard of review of a motion to amend is well-settled. Leave to amend under Rule 15 is "freely given when justice so requires" absent an adequate basis to deny amendment such as "futility, bad faith, undue delay or a dilatory motive." Fed. R. Civ. P. 15(a)(2); Maine State Building and Construction Trades Council, AFL-CIO v. United States Dep't of Labor, 359 F.3d 14, 19 (1st Cir. 2004) (internal quotation marks omitted); see also United States ex rel Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009) (outlining instances where denial of leave to amend would arise). Futility constitutes an adequate basis to deny amendment. See Universal Communications Systems, Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007); Maine State Building and Construction Trades Council, AFL-CIO v. United States Dep't of Labor, 359 F.3d at 19. "An amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss." Menard v. CSX Transp., Inc., 840 F. Supp. 2d 421, 427 (D. Mass. 2012).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include factual allegations that, when taken as true, demonstrate a plausible claim to relief even if actual proof of

the facts is improbable.  See Bell Atlantic v. Twombly, 550 U.S. 544, 555-558 (2007); see also Kenney v. State St. Corp., Civ. Action. No. 09-10750-DJC, 2011 WL 4344452, at *2 (D. Mass. Sept. 15, 2011) (applying Rule 12(b)(6) Twombly standard in assessing futility of proposed amendment).  Thus, although "not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully."  Boroian v. Mueller, 616 F.3d 60, 65 (1st Cir. 2010) (internal quotation marks omitted); accord Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016); Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011). "[A]ccepting as true all well-pleaded facts in the complaint and making all reasonable inferences in the plaintiff's favor," Boroian, 616 F.3d at 64, the "factual allegations 'must be enough to raise a right to relief above the speculative level.'" Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010); Gargano v. Liberty International Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (court "accept[s] as true all well pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff").  Legal conclusions are not included in the Rule 12(b)(6) record.  See Dixon v. Shamrock Financial Corp., 522 F.3d 76, 79 (1st Cir. 2008) (accepting "well-pleaded facts as true, but reject[ing] 'unsupported conclusions or interpretations of law'" in reviewing Rule 12(b)(6) dismissal);

see, e.g., Soto-Torres v. Fraticelli, 654 F.3d 153, 157 n.2 (1st Cir. 2011) ("complaint's allegations that Soto-Torres was 'illegally and unreasonabl[y] detained' and that 'excessive force' was used in pushing him to the floor are legal conclusions that are not to be credited").

Thus, "[t]o survive a motion to dismiss, the complaint must allege 'a plausible entitlement to relief.'" Correa-Ruiz v. Fortuno, 573 F.3d 1, 8 (1st Cir. 2009); see also Fitzgerald v. Harris, 549 F.3d 46, 52 (1st Cir. 2008). Because the complaint and the proposed amended complaint reference the insurance health care coverage plaintiff obtained through the Fund (Docket Entry # 1-1, ¶ 4) (Docket Entry # 24-1, ¶ 4), this court can consider the Fund's Summary Plan Description (Docket Entry # 31-1) of the health care coverage when deciding the motion to dismiss and the futility argument relative to the motion to amend. See Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 46 (1st Cir. 2014) ("we, like the district court, may consider . . . 'documents central to plaintiffs' claim,' and 'documents sufficiently referred to in the complaint'").

## FACTUAL BACKGROUND

A.  The Complaint

The facts set out in the original complaint are as follows. The Fund provides healthcare coverage for participants who work

7

a certain number of hours in covered employment with a contributing employer.  (Docket Entry # 31-1).  As stated in the Summary Plan Description, the Fund, i.e., the Massachusetts Laborers' Health and Welfare Fund, is a "Qualified Employee Health and Welfare Benefit Plan that provides medical care" and other "benefits to eligible employees and their qualified dependents" ("the plan").  (Docket Entry # 31-1, p. 55).  As the plan administrator, the Board of Trustees of the Fund and other individuals with delegated responsibility "have discretionary authority to interpret the terms of the plan."  (Docket Entry # 31-1, p. 55).

Plaintiff suffers from depression and a bipolar disorder, for which she was prescribed Latuda, Zoloft, and Lamictal.  (Docket Entry # 1-1).  She obtains healthcare coverage through her spouse, a participant in the plan as a member of a union.  (Docket Entry # 1-1).

In November 2015, the Fund advised plaintiff that she would be placed in a "pharmacy lock-in program."  (Docket Entry # 1-1).  The program required her to obtain certain prescriptions from predetermined pharmacy locations in order for the Fund to pay for "controlled substances."  (Docket Entry # 1-1).  These "controlled substances" included only Lyrica, which plaintiff confirmed with both the preselected pharmacy and the Fund.  (Docket Entry # 1-1).  The preselected pharmacy was located at

1145 Kempton Street in New Bedford, Massachusetts. (Docket

Entry # 1-1). Other prescriptions, i.e., Latrida and

Loncodical, became subject to the lock-in program soon after its

November 2015 enactment. As a result, the Fund required

plaintiff to obtain a prescription for these medications from

her primary care physician. (Docket Entry # 1-1). Plaintiff's

"psychologist, Dr. Munir,[4] had been prescribing the medication"[5]

for a five-year period and, due to the lock-in program, now

lacked the authority to prescribe it. (Docket Entry # 1-1).

The Fund's requirement that a primary care physician prescribe

the medication for an emotional condition he never treated was

therefore "wrong." (Docket Entry # 1-1).

After repeatedly telephoning her primary care physician for

a number of weeks, plaintiff was told that her primary care

physician could not prescribe these medications because he had

not treated her "emotional condition." (Docket Entry # 1-1).

Additionally, her primary care physician's office indicated it

had made efforts to contact the Fund to resolve the issue.

(Docket Entry # 1-1).

Once Dr. Munir learned plaintiff was not receiving her

prescribed medication, he contacted her primary care physician,

---

[4]  The complaint does not include Dr. Munir's first name.
[5]  Neither the complaint nor the proposed amended complaint
specifies the name(s) of "the medication" prescribed by Dr.
Munir for the last five years.

who thereafter authorized the prescription. (Docket Entry # 1-1). Plaintiff, however, became depressed and detached due to the deprivation of her medication for one-and-a-half weeks. (Docket Entry # 1-1). Because plaintiff was deprived of her medication for a period of time, the re-introduction of the medication on November 24, 2015 had "no effect" on her system. (Docket Entry # 1-1). On December 2, 2015, plaintiff tried to commit suicide by "strangling, cutting [her] wrists, and taking sleeping pills." (Docket Entry # 1-1). Plaintiff was transported to St. Luke's Hospital in New Bedford for treatment when her husband found her that same day. (Docket Entry # 1-1).

B. Proposed Amended Complaint

The proposed amended complaint includes all of the foregoing facts. The additional facts lay out Express Scripts' function as a Pharmacy Benefits Manager ("PBM"). (Docket Entry # 24-1). The proposed amended complaint also details Express Scripts' services and obligations to healthcare patients. (Docket Entry # 24-1). In particular, Express Scripts offers individuals in "health care programs . . . lower-cost therapeutic alternatives." (Docket Entry # 24-1). It "also designs medications therapy programs." (Docket Entry # 24-1). Express Scripts' services vary from developing a list of drugs for distribution to physician profiling. (Docket Entry # 24-1). It uses "panels of physicians, pharmacists, and other clinical

experts to develop a list of drugs . . . for distribution to health care patients." (Docket Entry # 24-1). It also "engages in physician profiling as to the designation of the correct physician to prescribe the appropriate medication." (Docket Entry # 24-1). Express Scripts additionally "conducts trials of specific medications." (Docket Entry # 24-1).

DISCUSSION

Express Scripts moves to dismiss the complaint with prejudice arguing that ERISA preempts the state negligence and contract claims. Express Scripts also argues that, even if the court allowed plaintiff to amend the complaint to include an ERISA claim, Express Scripts is not a proper party and compensatory damages are not recoverable. Plaintiff argues that her negligence claim is grounded upon defendants' failure to follow state laws and regulations. She submits that the negligence and contract claims are not preempted because they fall outside the scope of ERISA.

A. ERISA Preemption

Section 514(a) of ERISA broadly and expansively provides that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) ("provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"); accord

<u>Zipperer v. Raytheon Co.</u>, 493 F.3d 50, 53 (1st Cir. 2007)

(describing section 514(a) as "far reaching," but "not

boundless"); <u>see</u> <u>also</u> <u>Hotz v. Blue Cross and Blue Shield of</u>

<u>Massachusetts</u>, 292 F.3d 57, 60 (1st Cir. 2002) (29 U.S.C. §

1144(a) "has been applied widely to bar state claims seeking

damages for alleged breach of obligations pertaining to an ERISA

plan").  As interpreted by the Supreme Court, there are two

instances where ERISA preempts a state law claim:  "if it has a

reference to ERISA plans" or if it "has an impermissible

connection with ERISA plans."[6]  <u>Gobeille v. Liberty Mut. Ins.</u>

<u>Co.</u>, 136 S.Ct. 936, 943 (2016) (internal quotation marks

omitted).

In determining the reach of ERISA preemption, "the Supreme

Court has cautioned against a literal reading of [section]

514(a)'s 'relate to' standard, and ruled that courts must 'look

instead to the objectives of the ERISA statute as a guide to the

scope of the state law that Congress understood would survive.'"

<u>Zipperer v. Raytheon Co.</u>, 493 F.3d at 53 (quoting <u>Hampers v.</u>

<u>W.R. Grace & Co.</u>, 202 F.3d 44, 51 (1st Cir. 2000)); <u>Gobeille v.</u>

<u>Liberty Mut. Ins. Co.</u>, 136 S.Ct. at 943 (courts must avoid

"'uncritical literalism' in applying" the relate to standard

---

[6]  The parties correctly do not dispute that the plan is an
employee welfare benefit plan within the meaning of ERISA.  <u>See</u>
29 U.S.C. § 1002(1).

under section 514(a) of ERISA) (quoting N.Y. State Conf. of Blue
Cross & Blue Shield Plans v. Travelers Ins., 514 U.S. 645, 656
(1995)).  "'ERISA's objectives include providing a uniform
national administration of ERISA plans and avoiding inconsistent
state regulation of such plans.'"  Forristall v. Fed. Exp.
Corp., 61 F. Supp. 3d 186, 188 (D. Mass. 2014) (quoting Zipperer
v. Raytheon Co., 493 F.3d at 53).

The purported negligence concerns the failure or the
delayed arrangement of medication to plaintiff under an ERISA
plan.  As to the negligence claim, plaintiff maintains that,
because the "claim focuses on the failure to follow state law
statutes and regulations," it is outside the scope of ERISA.
(Docket Entry # 23).  She relies on Insco v. Aetna Health & Life
Ins. Co., 673 F. Supp. 2d 1180 (D. Nev. 2009), to assert that
the negligence claim is not preempted by ERISA.  (Docket Entry #
23).

In Insco, the plaintiff contracted a disease purportedly
because of unsafe, negligent healthcare practices at a clinic.
The plaintiff had healthcare coverage through his employer under
a plan administered by defendant Aetna Health and Life Insurance
Company ("Aetna").  The court found that the state law claims
were not preempted in part because the Nevada state law
provisions related to "general health care, an area historically
left to the states," and the provisions, as did Aetna's choice

13

of providers in its preexisting network, applied "to both ERISA and non-ERISA plans." Id. at 1186-89.

Plaintiff cites a number of Massachusetts laws and regulations[7] that she considers "more stringent than those existing in Nevada." (Docket Entry # 23). With respect to these statutes and regulations, plaintiff maintains that Express Scripts is considered a "carrier" within the meaning of 958 C.M.R. § 3.101 which, for reasons stated by Express Scripts (Docket Entry # 26, pp. 7-8), is incorrect.[8] Plaintiff also contends that these state "standards required Express Scripts to verify that the correct responsibilities had been assigned to the correct physician." (Docket Entry # 23).

Examining Insco in greater detail, the defendant, Aetna, was not only an administrator of the plaintiff's plan but "also a healthcare organization with its own duties under the Nevada Code." Insco v. Aetna Health & Life Ins. Co., 673 F. Supp. 2d at 1189. Because the claims involved such duties and quality

---

[7] Specifically, plaintiff cites the following laws and regulations: Mass. Gen. Laws ch. 176O, §§ 21, 23; Mass. Gen. Laws ch. 111, § 4N; 958 C.M.R. §§ 3.001, 3.101, 3.306; 130 C.M.R. § 403.408; and 243 C.M.R. § 3.06. Plaintiff alleges that these laws and regulations are proof of how carriers must develop guidelines to determine if services are "medically necessary." (Docket Entry # 23, pp. 6-7).

[8] Express Scripts makes a number of other arguments why various statutes and regulations plaintiff cites provide her no relief against ERISA preemption. (Docket Entry # 26, pp. 7-9). Here again, Express Scripts' arguments are well taken.

assurance standards under Nevada law independent and regardless of an ERISA plan, there was no preemption. See id. at 1188-89. As explained in Insco:

> [A] state law claim based on Aetna's allegedly negligent selection and retention of healthcare providers in its Preferred Provider Network is not preempted by ERISA § 514(a), because these choices are made not in conjunction with Aetna's contractual administration of an ERISA plan, but rather on Aetna's own accord, *regardless* of the existence of any ERISA plans . . . Aetna's choice of providers in the network is made *independently* from its contractual duties to *administer* any ERISA plan. Aetna's choice to grant access to its Network as it exists, or its *direct* selection of providers for Ross under the contract, are *not* subject to suit under state law, but Aetna's choice of providers within its own preexisting healthcare Network is.

Id. at 1189 (emphasis added). The court in Insco noted that Bui v. AT&T, 310 F.3d 1143 (9th Cir. 2002), "distinguished causes of action involving medical decisions made in the course of treatment, which are not preempted, from those that involve administrative decisions made in the course of administering an ERISA plan, which are preempted." Insco v. Aetna Health & Life Ins. Co., 673 F. Supp. 2d at 1188. The Insco court also noted, however, that Bui determined that, "[A] claim based on negligence in selection or retention of a provider, regardless of the source of the duty, 'is a necessary part of the administration of an ERISA plan,' not provision of services." Id. at 1188 (quoting Bui, 310 F.3d at 1152). The Insco court distinguished the latter language in Bui based on an *unpublished*

Nevada district court case that a claim based on the quality assurance standards in Nevada law was more akin to the "quality of medical services" than the administration of ERISA benefits. Id. at 1188 (distinguishing on Bui v. AT&T, 310 F.3d at 1152).

Here, however, plaintiff's claim that defendants failed to disburse medication, due to the administrative requirement of the plan that her primary care physician must be the one to prescribe it, is a necessary part of the administration of the ERISA plan at issue. Unlike the plaintiff's contraction of a disease at a clinic purportedly based on Aetna's failure to oversee and monitor the clinic or Aetna's preexisting choice of preferred providers for its network for ERISA and non-ERISA plans, see id. at 1183, 1188-89, this case necessarily entails an examination of the plan and its administrative requirements to obtain coverage for prescription drug benefits.

Furthermore, the conduct at issue "relates to" the ERISA plan because the plan provides prescription drug coverage (Docket Entry # 31-1, pp. 32-34) and plaintiff grounds the negligence claim on the alleged delay in prescription coverage. See Otero Carrasquillo v. Pharmacia Corp., 466 F.3d 13, 20 (1st Cir. 2006). "[A] state cause of action relates to an employee benefit plan" when "the cause of action requires 'the court's inquiry [to] be directed to the plan.'" Id. (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140-42 (1990)). Because

the conduct supporting the state law fraudulent inducement claim
in Otero involved consulting the ERISA plan, the claim was
directed at the ERISA plan and therefore preempted.  Id.  Here,
the purported undue delay resulting from the administration of
the plan in requiring plaintiff's primary care physician to
approve the medication in the pharmacy lock-in program
implicates the process used to obtain the prescription drug
benefit.  See Hotz v. Blue Cross and Blue Shield of Mass., Inc.,
292 F.3d 57, 60 (1st Cir. 2002) (finding removal appropriate
because, as in Pilot Life,[9] Hotz's claim "against the insurer
alleging undue delay in processing her physician's referral"
challenged "'the process used to assess a participant's claim
for a benefit payment under the plan'").  Any analysis of the
negligence claim necessitates referencing and examining the
prescription drug care benefit and the administration of that
benefit via the pharmacy lock-in program and accompanying
requirement to obtain prescriptions from plaintiff's primary
care physician.  (Docket Entry # 31-1, p. 33).  As such, the
claim is preempted.  See Otero Carrasquillo, 466 F.3d at 20
(finding state law claims preempted when they require analysis
of ERISA employee benefit plan); accord Pilot Life Ins. Co. v.
Dedeaux, 481 U.S. at 48 ("[t]he common law causes of action . .

---

[9]  Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 107 (1987).

. each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption under § 514(a)"); <u>Hotz v. Blue Cross and Blue Shield of Mass., Inc.</u>, 292 F.3d at 60; <u>see also</u> <u>Egelhoff v. Egelhoff ex rel. Breiner</u>, 532 U.S. 141, 149–50 (2001) (objective of ERISA to provide uniformity and administrative ease to plans would be inhibited if "ERISA administrators [had] to master the relevant laws of 50 states").

Express Scripts also argues that ERISA preempts the contract claim. Plaintiff acknowledges that the breach of contract claim by the plan "could be subject to ERISA." (Docket Entry # 23, p. 9).

The contract purportedly breached is the plan. (Docket Entry # 23, p. 9) ("The relevant contract in this case would be the Plan."). Adhering to the reasoning in <u>Bui</u>, the contract claim "do[es] not merely reference the ERISA plan, [it] require[s] its construction because the contract allegedly breached is the ERISA plan itself." <u>Bui</u>, 310 F.3d at 1152. The contract claim is therefore preempted. <u>See</u> <u>id.</u> Inasmuch as ERISA preempts the negligence and contract claims, it is not necessary to address defendants' alternative arguments seeking to dismiss these claims. The claims in the original complaint are therefore subject to dismissal as to Express Scripts, the only movant in the motion to dismiss. Because the negligence

and breach of contract claims in the proposed amended complaint are equally deficient, the motion to amend is denied on the basis of futility.

B.  Proper Party and Damages

In moving to dismiss the complaint, Express Scripts argues it is not a proper party in an ERISA denial of benefits claim in the event plaintiff amends the complaint to include such a claim.  Express Scripts asserts that, because it performs "only 'administrative services' for the Fund relating to the management of the Fund's prescription drug benefit," it is not a proper defendant.  (Docket Entry # 17, pp. 7-8).  If ERISA preempts the state law claims, plaintiff argues that, although the party that controls the plan is ordinarily the proper defendant, Express Scripts "could have taken on the responsibilities of the administration" in light of its involvement in the distribution process of medication under the Fund.  (Docket Entry # 23, pp. 8-9).

Because the deficient proposed amended complaint does not include an ERISA claim, the arguments concern whether to allow plaintiff an opportunity to file a motion for leave to amend to raise an ERISA claim or dismiss this action with prejudice, as Express Scripts requests.  Under certain circumstances, a court may allow a plaintiff an opportunity to amend in lieu of a dismissal of the claim with prejudice.  See Eastern Food

Services, Inc. v. Pontifical Catholic University Services Ass'n, Inc., 357 F.3d 1, 8 (1st Cir. 2004) (permission to amend complaint "often granted not only pretrial but after dismissal for failure to state a claim where court thinks that the case has some promise"); see, e.g., Rodi v. Southern New England School of Law, 389 F.3d 5, 20 (1st Cir. 2004) (directing district court to afford the plaintiff opportunity to amend and replead unfair deceptive trade practice claim).

It is well established that the party that controls the administration of an ERISA plan is the proper party defendant in a denial of benefits claim. Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 665 (1st Cir. 2010). The plan administrator, i.e., the Fund, is therefore a proper defendant. See id. As recognized in Gómez, when "an entity or person other than the named plan administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits." Id.

In the case at bar, plaintiff argues that Express Scripts meets the Gómez exception and is therefore a proper party because "Express Scripts could have taken on the responsibilities of the plan." (Docket Entry # 23). As a PBM, Express Scripts "did far more than exercise physical control as to the performance of administrative tasks," according to plaintiff. (Docket Entry # 23, p. 9).

As explained in Gómez, "[T]he mere exercise of physical
control or the performance of mechanical administrative tasks
generally is insufficient to confer fiduciary status."  Id.
Thus, a "claimant's employer who only performed 'ministerial
functions in the processing of the claimant's disability
claims'" is therefore not "'held liable under ERISA for the
denial of the claimant's disability claims.'"  Newman v. Metro.
Life Ins. Co., Civil Action No. 12-10078-DJC, 2013 WL 951779, at
*6 (D. Mass. Mar. 8, 2013) (quoting Gómez, 626 F.3d at 666, in
parenthetical) (brackets omitted), appeal docketed, No. 15-2239
(Oct. 21, 2015).  In a denial of benefits claim, "the plan
administrator, or the person or entity functioning as the
administrator, is the person or entity that has the authority or
responsibility for administering benefits under the plan."  Id.
"'Exercising control over the administration of benefits is the
defining feature of the proper defendant under 29 U.S.C. §
1132(a)(1)(B).'"  Id. (quoting Evans v. Emp. Benefit Plan, 311
F. App'x 556, 558 (3rd Cir. 2009), in parenthetical).

    Given the preference to decide cases on the merits, this
court declines to impose an outright denial of an ERISA claim.
See generally Rodi v. Southern New England School of Law, 389
F.3d at 20 (noting "'the purpose of pleading is to facilitate a
proper decision on the merits'").  Plaintiff is thus afforded 45
days to file a motion for leave to amend the complaint to

include an ERISA claim against Express Scripts setting out specific facts that provide a plausible claim to name Express Scripts as an ERISA defendant.  Plaintiff should also re-assess the viability of the negligence and breach of contract claims against the Fund and, if appropriate, seek leave to include an ERISA claim rather than the state law claims against the Fund.

Express Scripts' argument that any ERISA claim cannot seek "extra-contractual damages" (Docket Entry # 17, pp. 9-10) is well taken but premature in light of allowing plaintiff the opportunity to file a motion for leave to amend to include an ERISA claim.  Plaintiff is advised, however, that ERISA does not allow recovery for "'extra[-]contractual damages'—i.e., damages separate from the benefits to which the plan documents entitle the participants—such as emotional distress resulting from a plan's failure to honor it[s] obligations, . . . or consequential damages arising from a delay in processing a benefit claim."  Evans v. Akers, 534 F.3d 65, 73 (1st Cir. 2008) (citations omitted).

CONCLUSION

In accordance with the foregoing discussion, Express Scripts' motion to dismiss (Docket Entry # 16) is **ALLOWED** to the extent that the negligence and contract claims against Express Scripts are dismissed and plaintiff is afforded 45 days to file a motion for leave to file an amended complaint to include an

ERISA claim[s] against Express Scripts.  The motion to amend

(Docket Entry # 24) is **DENIED**.

                                    /s/ Marianne B. Bowler
                                    **MARIANNE B. BOWLER**
                                    United States Magistrate Judge